Great. Then we can get started this morning. Our first case for argument today is the United States v. Brett Brimberry. Ms. McDonald. May it please the Court. The issue in this case is whether Mr. Brimberry was entitled to the entrapment instruction. When that instruction is given, the government bears the burden of proving beyond reasonable doubt that it was not entrapment. Mr. Brimberry presented some evidence, a requirement that this Court has described as a low bar, of a lack of predisposition and government enticement. By failing to give the instruction, the trial court relieved the government of its burden of proof and relieved the jury of its duty as fact finder. This Court should reverse. Both Mr. Brimberry and the government argument center on two of this Court's cases, Anderson and Sewell. Of course, with different conclusions. This case is like Anderson. In all three cases, though, the agents used photos of adults. They claimed they were adults from the beginning. They were all on hookup sites, and eventually each agent disclosed that they were 15 years old. In Anderson, nearly 300 text messages were sent over the course of two days, and the agent revealed the age after 38 of those 300 texts. Here, 89 messages were sent over the course of three and a half hours, and the agent revealed the age after two hours in the 36th message. Looking at her decision in Anderson, and I know we're focusing on the chat, similar to what was happening in Anderson, what could you drill us down to looking at these facts as to what showed that plus, something other than? Certainly. The plus comes from the government's misrepresentations and promises that this was not a setup, that they would never do this, that they were not evil, which mirrors Anderson's comments, where Anderson also promised secrecy, said that that would be cruel and mean. I think something that's important here is in Anderson, this Court noted that there were multiple breaks in the conversation between the agent and the defendant. Here, there was only one break. There was a 10-minute break when Mr. Brimberry responded to learning that the agent was 15 years old. After that, every single time Mr. Brimberry made any sort of comment, whether it was a reluctance or a fear of being a sex offender, the agent responded within usually the same minute. This was an onslaught of responses. In Anderson, the agent asked for sex 11 times over the course of two days. Here, the agent asked for sex by discrete and obvious invitations eight times in less than an hour. There was really no time for anything to transpire. There was none of that moment that Anderson had. In both Anderson and here, it was the agent who pressed to solidify plans. Here, once the agent's age was revealed, Mr. Brimberry's comments concerned consent, the first question, getting in trouble, and agreeing to the agent's plans and desires. He actually never, after that 15 age was revealed, he never asked for sex. He never brought up any sexual activities. It was all the agent that actually did that. I think that's an important fact that makes Anderson more like this case here. In both Anderson and the present case, each time the defendant expressed any reluctance, the agent responded with statements like, I would never do that, that would be mean and cruel. In Anderson and here were, I'm not evil, that would be really shitty, I would never do that, all I can say is I would never do that. This court found that the entrapment instruction was warranted in Anderson because he expressed reluctance. Each time, it was the agent who pressed for sex, nearly always promising secrecy. The agent repeatedly asked the defendant over to come over, and also guilt, which I think arguably is not present here. In Sewell, on the other hand, that's markedly different. There, the defendant took an active role in arranging the encounter. I believe this court described it as keeping the discussion focused on explicit sexual activity. He requested the 15-year-old agent girl to describe what she wanted, what she liked for sex, asked for her to give him requests as to what he wanted them to do. Here, Mr. Brimberry simply agreed to what the agent suggested. There, the defendant pressed to solidify plans, and here it was the agent who did it. Importantly, this court distinguished Sewell from Anderson. In Sewell, there were three asks for sex by the agent over six hours. That is very unlike the 11 over the course of two days, but even more unlike the 8 that occurred in this short amount of time from 7.02 p.m. to 7.58. In Sewell, there were no repeated assurances to keep it a secret. There was no use of guilt, and frankly, there was no need for reassurance. As this court noted, the defendant was willing and ready and seemed to relish, in this court's language, the idea of having sex with a 15-year-old. When we're looking at whether or not the district court should have given the entrapment instruction, I think one thing is interesting to point out. First is we're sort of parsing both the government and Mr. Brimberry over how many times and how quickly it happened, whether or not that amounted to pressure. That is the role of the jury. Mr. Brimberry presented some evidence, more than enough evidence, that he was not predisposed to commit the crime. But predisposed is a different question other than inducement. Correct. They are intertwined in that the predisposition most important factor is the reluctance overcome by government persuasion. But he presented both, not only in his arguments before, in his response to the government's motion for limine, but also his testimony demonstrated that he was not predisposed and that the pressure from the government was intense. When it's this close, this should go to a jury. As far as a policy is concerned, most cases don't go to a jury anymore in federal court, as we all know. And in this instance, Mr. Brimberry went to trial, and we want our defendants to go to trial. We want the defendants to have their defenses available to them, and we want the jury, not the judge, to decide what happens in that case. Mr. Brimberry was denied that here, and we ask the court to reverse. Thank you. Thank you. Mr. Dean. Thank you, Your Honor. May it please the court, David Dean on behalf of the appellee of the United States of America. I'd like to direct the court's attention to two time stamps in the chat, which represent the proffered evidence, the only proffered evidence from the appellant in this case, as to what exactly the government agent supposedly has done to induce the defendant to commit this crime. Those time stamps are 7.40 p.m. and 7.47 p.m. 7.40 p.m. is the first time the appellant shows any modicum of what's been characterized as reluctance, when he says, is this a setup? At 7.47 p.m., the appellant says, I'm already on my way. I think that's essential and, frankly, determinative in this case, because as pointed out in the dissent in Anderson, that case, Anderson, is already, frankly, an extreme outlier in terms of the cases where this court has found evidence of inducement, where the evidence was characterized as what's persistent or subtle persuasion, as opposed to something more egregious like the use of epithets or threats or anything like that. And you're simply using so-called subtle persuasion. The cases outside of Anderson have been looking at months or weeks. And Anderson, of course, itself involves two days. This literally involves seven minutes, during which the only thing the agent did was assure the appellant that it was not a setup. Now, simply, Mayfield is very clear that offering the furnishing opportunity to commit the crime on customary terms is not inducement. And I don't know how the agent could have possibly furnished Mr. Brimberry an opportunity to commit the crime without denying that it was a setup. That's inherent in the nature of these sting operations. For these reasons, the government believes there's clearly no evidence of inducement in this case. I welcome any additional questions. Otherwise, the government will rest on its brief. Thank you. Thank you. Ms. McDonald, any rebuttals? Just in one point to the short amount of time where there were five promises made by the government that this was not a setup. I think in this case, the short amount of time and the amount of pressure and the quickness with which it was placed on the defendant by the government, giving him no time to react in really any way, is something that this court should take into consideration. It was a high-pressure, very, very fast situation. Thank you. Thank you very much. Our thanks to both counsel. We'll take the case under advisement.